**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PRENTICE DEVELL WATKINS,

       Petitioner,                Civil No. 04-CV-72112-DT
                                   HONORABLE ARTHUR J. TARNOW
v.                             SENIOR UNITED STATES DISTRICT JUDGE

JEFFREY WOODS,

       Respondent,
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

       Prentice Devell Watkins, ("Petitioner"), presently confined at the Kinross Correctional Facility in Kincheloe, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his convictions for first-degree murder, M.C.L.A. 750.316; and felony-firearm, M.C.L.A. 750.227b. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

### I. Background

       Petitioner pleaded guilty to one count of open murder and to one count of felony-firearm. Four days later, the parties conducted an evidentiary hearing to determine the degree of murder that petitioner was guilty of. On November 17, 1999, the Jackson County Circuit Court judge found petitioner guilty of first-degree murder.

       This Court adopts the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

1

On January 18, 1998, Allen Russell Stewart was shot in the back in his mother's front yard and died the same day from his gunshot wound. There were no eyewitnesses to the shooting, although the next-door neighbor recalled seeing two men standing by a tree shortly before Allen was shot, and stated that she heard the gunshot. Allen's mother, Charlene Stewart, also heard a loud noise at the time of the shooting and observed Allen staggering into her kitchen with blood on his head. Charlene said that after Allen was shot, she was unable to locate his wallet or several pieces of jewelry that he normally wore. A police officer who responded to Charlene's 911 call noticed that Allen had duct tape on his wrists. After a search of Allen's room at his mother's house, the officer found what appeared to be drug-trafficking paraphernalia and 10.98 grams of crack cocaine with an estimated value of $1,000.

The police subsequently received information that defendant may have been involved in the shooting. A police detective traveled to Kentucky, where defendant was in jail on an unrelated charge, and interviewed defendant after he waived his *Miranda* rights. According to the detective, defendant initially denied any involvement in the shooting or that he had ever been to Michigan. During a third interview, defendant allegedly admitted that he and a friend, Ardell Robinson, went to the neighborhood to attend a party and sat on the hood of Allen's car waiting for the party to begin. Defendant claimed that Allen pushed him and his gun went off as he slipped and fell. In a fifth interview, defendant allegedly told the detective that Robinson gave him a gun before they arrived in Allen's neighborhood. Defendant said that Robinson grabbed Allen, and when Allen broke away and approached defendant, he pulled his gun and it went off. The detective claimed that defendant further admitted that he and Robinson discussed robbing someone.

The prosecution charged defendant with open murder and felony-firearm. At a hearing on November 4, 1999, defendant pleaded guilty to both charges and claimed that he shot Allen after the two fought. During the course of the plea hearing, the court informed defendant that by pleading guilty he was waiving his right to a jury trial and the right to remain silent at that trial. Defendant indicated his understanding of his rights and the consequences of his plea and waived his rights on the record.

On November 8, 1999, the court held a degree hearing pursuant to M.C.L. § 750.318. At the hearing, the prosecution presented several witnesses, including Charlene Stewart, the police officer who responded to the scene following the shooting, and the detective who interviewed defendant. The prosecution also called a forensic pathologist who testified that Allen had

2

scrapes on his forehead and face and died as a result of the gunshot wound. According to the pathologist, the bullet entered Allen's back, traveled down through his body, perforating his aorta, and stopped in his thigh. After the prosecution and defense rested, the court called defendant as a witness, and he was questioned both by the court and the prosecution. Defense counsel did not object to the court calling defendant as a witness or to defendant's testimony. During his testimony, defendant denied robbing Allen and continued to insist that the shooting occurred as the two fought.

In an oral decision following the degree hearing, the trial court found that defendant planned to rob Allen and that the shooting could not have happened in the manner described by defendant. The court then concluded that the killing constituted felony murder because it occurred during the course of a robbery.

*People v. Watkins,* 247 Mich. App. 14, 16-19; 634 N.W. 2d 370 (2001)(footnotes omitted).

Petitioner's conviction was affirmed on appeal. *Id; aff'd* 468 Mich. 233; 661 N.W. 2d 553 (2003).

Petitioner then filed a petition for writ of habeas corpus with this Court. Respondent filed a motion to dismiss the petition for writ of habeas corpus, because it contained two claims which had not been exhausted with the Michigan courts. On March 10, 2005, this Court issued an order holding the petition in abeyance in order to permit petitioner to return to the state courts to exhaust his claims by filing a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.* The Court also administratively closed the case.

Petitioner subsequently filed a motion for relief from judgment with the trial court, in which he raised several additional ineffective assistance of counsel claims. The motion was denied by the trial court. *People v. Watkins,* No. 99-94247-FC (Jackson County Circuit Court, June 23, 2005). The Michigan Court of Appeals dismissed

petitioner's post-conviction appeal, because petitioner had failed to comply with M.C.R. 7.201(B)(3) and M.C.R. 7.216(A)(1) by providing the Michigan Court of Appeals with a current register of actions and with four additional copies of his original application for leave to appeal. *People v. Watkins,* No. 271300 (Mich.Ct.App. October 6, 2006).  The Michigan Supreme Court denied petitioner leave to appeal. *People v. Watkins,* 477 Mich. 1111, 730 N.W.2d 220 (2007).

Petitioner's habeas petition was subsequently reinstated by the Court. Petitioner now seeks habeas relief on the following grounds:

> I. Mr.Watkins' Fifth Amendment right to remain silent and compelling a criminal defendant to testify against himself was violated by the trial court where the trial court called Mr. Watkins to the stand and compelled him to testify at the degree hearing.
>
> II. Mr. Watkins was denied a fair trial and his convictions must be reversed where his Sixth Amendment right to the effective assistance of counsel was violated by defense counsel's advice to plead guilty, failure to object to having a bench trial, failure to object to hearsay testimony, failure to advise defendant of the important rights that would be lost by pleading guilty, failure to object to prosecutorial misconduct, and conflict of interest.
>
> III. Mr. Watkins' Fourteenth Amendment right to a fair trial was violated by the trial court, where the trial court allowed insufficient evidence to support the trial court's conclusion that the defendant was guilty, and furthermore, there were no objections by the prosecution, the trial court, or defense counsel to having a bench trial.

.

The Court subsequently granted petitioner an evidentiary hearing on his ineffective assistance of counsel claims and appointed Kimberly W. Stout to represent petitioner.  An evidentiary hearing was conducted on petitioner's claims on August 9, 2010.  Both parties have filed briefs in support of their positions.

## II.  Standard of Review

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim–
>
> (1)     resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal
>         law, as determined by the Supreme Court of the United
>         States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence
>         presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A.  Mr.Watkins' Fifth Amendment right to remain silent and compelling a criminal defendant to testify against himself was violated by the trial court where the trial court called Mr. Watkins to the stand and compelled him to testify at the degree hearing.**

Petitioner first contends that his Fifth Amendment right against self-incrimination was violated when the trial court judge called him to testify at the degree hearing.

There are several problems with petitioner's claim.  First, petitioner did not invoke his privilege against self-incrimination, but agreed to make a statement to the trial court.  As the Supreme Court has explained, a number of its decisions "'stand for the proposition that, in the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not "compelled" him to incriminate himself.'" *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984) (*quoting Garner v. United States*, 424 U.S. 648, 654 (1976)).

Secondly, as the Michigan Supreme Court indicated in rejecting petitioner's claim, the degree hearing following a guilty plea to open murder is simply an extension of the plea hearing for purposes of the plea colloquy. *See People v. Watkins,* 468 Mich. at 239.  Petitioner had already pleaded guilty to open murder.  By entering a guilty plea, a defendant waives his constitutional rights to a criminal trial, including the protection against self-incrimination. *Florida v. Nixon,* 543 U.S. 175, 188 (2004); *Boykin v. Alabama*, 395 U.S. 238 (1969).  By pleading guilty to the open murder

charge, petitioner had waived his right to self-incrimination with respect to establishing the elements of the crime.

To the extent that petitioner argues that the degree hearing was more akin to a sentencing hearing for which his Fifth Amendment rights apply, he would also not be entitled to relief. In *Mitchell v. United States,* 526 U.S. 314, 328-29 (1999), the United States Supreme Court held that the Fifth Amendment right against self-incrimination prevents a sentencing court from drawing negative inferences from a defendant's silence in determining the facts relating to the circumstances and details of the crime.

The holding in *Mitchell* is inapplicable to petitioner's case for several reasons. First, unlike the defendant in *Mitchell,* petitioner agreed to testify at the degree hearing. By choosing to testify at the degree hearing, petitioner waived his Fifth Amendment privilege against self-incrimination at this hearing, even if this proceeding was tantamount to a sentencing hearing. *Mitchell* stands for the proposition that the Fifth Amendment privilege against self-incrimination precludes a sentencing court from drawing a negative inference from a defendant's refusal to speak at sentencing. Because petitioner testified at the degree hearing, *Mitchell* does not apply.

Finally, if there were error in this case, it was harmless at best. A federal court can grant habeas relief only if the trial error had a substantial and injurious effect or influence upon the verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). Contrary to petitioner's contention, violations of the Fifth Amendment are not structural errors, but are subject to a harmless error analysis. *See Mayle v. Felix*, 545 U.S. 644, 672-73 (2005); *Neder v. United States*, 527 U.S. 1, 18 (1999)(the erroneous admission of

evidence in violation of the Fifth Amendment's guarantee against self-incrimination is subject to harmless-error analysis); *Penry v. Johnson*, 532 U.S. 782, 795 (2001)(success on Fifth Amendment self-incrimination claim in habeas case requires showing that the error had "substantial and injurious effect or influence in determining the jury's verdict") (internal quotation marks omitted)).

In the present case, the admission of petitioner's testimony at the degree hearing did not have a substantial and injurious effect on the court's verdict. At the degree hearing, petitioner testified that he did not intend to rob the victim and the shooting was an accident that resulted from a dispute. Petitioner's testimony, if believed, would not have supported a finding of guilt of first-degree felony murder. By contrast, there was substantial evidence presented to support the trial court's finding that petitioner was guilty of first-degree felony murder, independent of petitioner's statement. The victim was discovered after the shooting with duct tape around his arm and covering his bracelet and medallion. The victim had suffered injuries on both sides of his face. The victim's mother, as well as the police officer who investigated the crime scene, stated that the victim's wallet and his jewelry were missing after the shooting. There was also evidence presented that the victim engaged in drug trafficking, which lead to the reasonable inference that he was a likely target of a robbery.

The detective who investigated the case testified that petitioner admitted that he possessed a gun at the time that the victim was shot and that he and Ardell Robinson discussed robbing someone. According to the pathologist, the bullet that killed the

victim entered his back, traveled down through his body, perforating his aorta, and

stopped in his thigh.  This evidence would be consistent with the victim lying on the

ground when he was shot and not standing, as petitioner claimed.  Because the

admission of petitioner's statement at the degree hearing did not have a substantial

and injurious effect or influence on the verdict, petitioner is not entitled to habeas relief

on this claim.

> **B.** **Mr. Watkins was denied a fair trial and his convictions must be reversed where his Sixth Amendment right to the effective assistance of counsel was violated by defense counsel's advice to plead guilty, failure to object to having a bench trial, failure to object to hearsay testimony, failure to advise defendant of the important rights that would be lost by pleading guilty, failure to object to prosecutorial misconduct, and conflict of interest.**

Petitioner next contends that he was deprived of the effective assistance of trial

counsel. [1]

To show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two prong test.  First, the

defendant must demonstrate that, considering all of the circumstances, counsel's

performance was so deficient that the attorney was not functioning as the "counsel"

---

[1] Respondent contends that some of petitioner's ineffective assistance of counsel claims are procedurally defaulted for various reasons.  In this case, because "the procedural default issue raises more questions than the case on the merits", this Court will assume, for the sake of resolving the claims, that there is no procedural default by petitioner and will decide the merits of the claims. *Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003)(internal quotation omitted).

guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687

(1984). In so doing, the defendant must overcome a strong presumption that counsel's

behavior lies within the wide range of reasonable professional assistance. *Id.* In other

words, petitioner must overcome the presumption that, under the circumstances, the

challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second,

the defendant must show that such performance prejudiced his defense. *Id.* To

demonstrate prejudice, the defendant must show that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694. To prevail on his ineffective assistance of

counsel claims, a habeas petitioner must show that the state court's conclusion

regarding these claims was contrary to, or an unreasonable application of, *Strickland.*

*See e.g. Dittrich v. Woods,* 602 F.Supp.2d 802, 807 (E.D.Mich. 2009).

Petitioner's primary allegation is that counsel was ineffective for recommending

him to plead guilty to open murder, rather than take the case to a bench or jury trial.

Under Michigan law, it is proper to charge a defendant with the crime of open

murder. Such a charge gives a circuit court jurisdiction to try a defendant on first and

second degree murder charges. *See Taylor v. Withrow,* 288 F.3d 846, 849 (6th Cir.

2002); *See also Williams v. Jones,* 231 F. Supp. 2d 586, 589 (E.D. Mich. 2002)(*citing*

M.C.L.A. 750.316, 750.318; *People v. McKinney*, 65 Mich. App. 131, 135; 237 N.W. 2d

215, 218 (1975)). However, if a defendant pleads guilty to open murder, the trial judge

conducts a record hearing to determine whether the crime committed was first or

second degree murder. *People v. Middleton*, 22 Mich.App. 694, 696; 177 N.W.2d 652
(1970).

The only person to testify at the evidentiary hearing concerning petitioner's
decision to plead guilty to the open murder charge was his trial counsel, Alfred Brandt.
Brandt testified that the prosecution had a very strong case.  Brandt indicated that
based on his experience in Jackson County. with the exception of one case, Jackson
County judges found defendants who pled guilty to open murder guilty of
second-degree murder at the degree hearing.

With respect to his decision to plead guilty as opposed to choosing a bench trial,
counsel indicated that in his experience, judges do not follow the evidentiary rules quite
as strictly in a degree hearing as they do in bench trials.  Trial counsel also believed
that the Judge was more likely to ask questions during a degree hearing than during a
bench trial, which he thought would be advantageous to his client. Although counsel
acknowledged that petitioner had indicated that the shooting was accidental, counsel
was afraid that it would be attacked at trial as self-serving.

In order to satisfy the prejudice requirement for an ineffective assistance of
counsel claim in the context of a guilty plea, the defendant must show that there is a
reasonable probability that, but for counsel's errors, he or she would not have pleaded
guilty, but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59
(1985).  An assessment of whether a defendant would have gone to trial but for
counsel's errors "will depend largely on whether the affirmative defense likely would
have succeeded at trial." *Id.* at 59.  The Sixth Circuit has interpreted *Hill* to require a

federal habeas court to always analyze the substance of the habeas petitioner's underlying claim or defense to determine whether but for counsel's error, petitioner would likely have gone to trial instead of pleading guilty. *See Maples v. Stegall,* 340 F. 3d 433, 440 (6th Cir. 2003). In other words, petitioner must show a reasonable probability that but for counsel's errors, he would not have pleaded guilty, because there would have been a reasonable chance that he would have been acquitted had he insisted on going to trial. *Doyle v. Scutt,* 347 F. Supp. 2d 474, 484 (E.D. Mich. 2004).

Petitioner has failed to show a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading guilty. *See Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002). Petitioner admitted that he had shot the victim. Although petitioner claimed that the shooting was accidental, it conflicted with many facts. The victim was found with duct tape around his arm and covering his bracelet and medallion. The victim had injuries on both sides of his face, which were unlikely to have come from a simple fall. Petitioner's accident story failed to take into account witness statements concerning two people that were seen standing by a tree for quite a while before the shooting. Petitioner's accident story was also inconsistent with the downward angle of the bullet. The bullet that entered the victim's back lodged much further down in the body. This evidence was more consistent with the victim lying on the ground when shot than with petitioner's story that victim was standing up when shot. Lastly, petitioner had admitted in one of his statements to Detective Maurice Crawford that he had discussed robbing the victim with Ardell Robinson.

In light of the evidence in this case, a jury or judge in a bench trial would most likely have found petitioner guilty of first-degree felony murder. Contrary to petitioner's contention, the offense of first-degree felony murder is included within the charge of open murder. *See McKinney,* 65 Mich. App. at 135-36 (*citing People v. Page*, 198 Mich. 524, 165 N.W. 755 (1917)); *See also Armstrong v. Egeler,* 563 F. 2d 796, 797 (6th Cir. 1977). As discussed in greater detail when addressing petitioner's sufficiency of evidence claim, *infra*, the evidence in this case clearly supported a verdict of first-degree felony murder. Because petitioner has failed to show that he would have been acquitted or have received a lesser sentence had he gone to trial, he has failed to show that he was prejudiced by counsel's advice to plead guilty to open murder.

With respect to petitioner's related claim that he did not know that he faced a possible nonparolable life sentence, this Court notes that the trial court advised petitioner at the time that he pleaded guilty to open murder that first-degree murder carries a mandatory sentence of life imprisonment without parole. (Plea Tr., pp. 5-6). A state court's proper plea colloquy will cure any misunderstandings that a petitioner may have has about the consequences of the plea. *Ramos v. Rogers*, 170 F. 3d 560, 565 (6th Cir. 1999). Petitioner would not be entitled to the withdrawal of his plea based on his allegation that his attorney gave him erroneous sentencing information where petitioner was given the correct sentencing information by the sentencing judge at the time of the plea. *See United States v. Todaro*, 982 F. 2d 1025, 1029-1030 (6th Cir. 1993). Moreover, trial counsel testified at the evidentiary hearing that he advised petitioner prior to the plea that first-degree murder carries a non-parolable life

sentence.  Detective Maurice Crawford testified that he explained the matter to him during some of the November 1998 interviews in Paducah, Kentucky, petitioner even stated that he would be spending the rest of his life incarcerated.

Petitioner also claims that counsel was ineffective for not hiring an investigator and asking if he could speak to Ardell Robinson's lawyer.  In the absence of a showing of prejudice, defense counsel's failure to retain a private investigator did not constitute ineffective assistance. *See Linnen v. Poole,* 689 F.Supp.2d 501, 532 (W.D.N.Y. 2010). Moreover, as discussed in greater detail when discussing petitioner's conflict of interest claim, *infra,* Ardell Robinson testifed at the evidentiary hearing but failed to offer any testimony that would have been favorable to petitioner.  A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F. 3d 520, 527 (6th Cir. 2004)(internal quotation omitted).  Because there is no indication that Ardell Robinson would have testified favorably for petitioner, counsel was not ineffective for failing to contact Robinson's lawyer to interview him as a possible defense witness.

Petitioner next contends that counsel was ineffective for failing to investigate his competency to plead guilty.  No evidence has been presented by petitioner, in either the state or federal courts, to support petitioner's contention that he was mentally incompetent when he pleaded guilty.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  The only evidence presented in support of petitioner's claim was his mother's testimony that, before he turned 16, he

had had some mental problems. Petitioner's mother testifed that he twice attempted suicide and was institutionalized three times. Petitioner was never, however, assigned a psychologist. Instead, he was assigned a social worker. Trial counsel and the investigating detective testified that petitioner was mentally alert and able to understand the charges against him and the proceedings.

A defendant may not be put to trial unless he or she has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). The competency standard for pleading guilty is the same as the competency for standing trial and is not a higher standard. *Godinez v. Moran*, 509 U.S. 389, 398 (1993).

Petitioner has presented no evidence that he was unable to understand the proceedings against him or assist his attorney. Not every manifestation of mental illness demonstrates incompetency to stand trial.

A review of petitioner's plea transcript and the degree hearing shows that he was competent at the time that he entered his plea of guilty and later when he testified at the degree hearing. Petitioner has presented no evidence that he was not in possession of his mental facilities at the time that he pleaded guilty. Because petitioner has failed to establish that he was incompetent at the time of his plea and degree hearing, trial counsel's failure to obtain a competency evaluation for petitioner did not prejudice him. Therefore, he has failed to support a claim of ineffective assistance of trial counsel.

Petitioner also claims that his trial counsel labored under a conflict of interest, because other persons who were present at the crime scene attempted to retain petitioner's counsel to represent them in regards to the charges that petitioner was convicted of. Defense attorneys owe their clients a duty of loyalty, including the duty to avoid conflicts of interest. *Strickland v. Washington,* 466 U.S. at 688(*citing to Cuyler v. Sullivan,* 446 U.S. 335, 346 (1980)). A criminal defendant is entitled to effective assistance of counsel that is free from conflict. *See Holloway v. Arkansas,* 435 U.S. 475, 483-84 (1978); *Robinson v. Stegall,* 343 F. Supp. 2d 626, 633 (E.D. Mich. 2004).

Petitioner has failed to present this Court with any evidence that his attorney labored under a conflict of interest. First, petitioner has presented no evidence that any persons who were present at the shooting attempted to retain Brandt to represent them in this case. Brandt did testify that he was appointed as Ardell Robinson's lawyer in an unrelated case months earlier. The appointment did not last long because Robinson quickly became dissatisfied with Brandt. Brandt denied discussing petitioner's murder charge with Robinson. Brandt denied asking petitioner to cooperate against Robinson.

Defense counsel's failure to interview or to consider calling Robinson to testify on petitioner's behalf did not deprive petitioner of the effective assistance of counsel. Had defense counsel attempted to interview or call Robinson as a witness, he would likely have invoked his Fifth Amendment right against self-incrimination and refused to testify, as he did at the evidentiary hearing. *Stewart v Wolfenbarger,* 468 F. 3d 338, at 352 (6th Cir. 2006). In this case, it is highly speculative that Robinson would have

16

incriminated himself or deflected suspicion from petitioner, nor is there any showing

that Robinson would have offered any exculpatory testimony at trial. *Id.* Petitioner has

failed to show that he was prejudiced by counsel's brief representation of Robinson in a

prior unrelated matter.

Lastly, petitioner claimed that counsel was ineffective for failing to object on

hearsay grounds to Detective Crawford's testimony that he had heard that the victim

was a drug dealer.  Petitioner is unable to show that he was prejudiced by counsel's

failure to object, because even in the absence of this testimony, there was sufficient

evidence presented that the victim was a drug dealer.  Petitioner is not not entitled to

habeas relief on his second claim.

> **C.  Mr. Watkins' Fourteenth Amendment right to a
> fair trial was violated by the trial court, where the
> trial court allowed insufficient evidence to
> support the trial court's conclusion that the
> defendant was guilty, and furthermore, there
> were no objections by the prosecution, the trial
> court, or defense counsel to having a bench trial.**

Petitioner lastly claims that there was insufficient evidence to convict him of first-

degree felony murder.

Petitioner did not go to trial here, but pleaded guilty.  There is no federal

constitutional requirement that a factual basis be established to support a guilty plea.

See *Roddy v. Black,* 516 F. 2d 1380, 1385 (6th Cir. 1975); *See also Holtgreive v. Curtis,*

174 F. Supp. 2d 572, 582 (2001).  Although M.C.R. 6.302(D)(1) requires that a factual

basis must be elicited from a defendant prior to accepting his or her guilty plea, no

federal constitutional issue is raised by the failure of a Michigan trial court to comply with a state law or court rule concerning establishing the factual basis of a guilty plea. *Holtgrieve,* 174 F. Supp. 2d at 582. "[T]he requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes." *United States v. Tunning,* 69 F. 3d 107, 111 (6th Cir. 1995). Any claim that the trial court failed to establish a sufficient factual basis to support petitioner' s guilty plea does not provide a basis for federal habeas relief, because there is no federal constitutional requirement that a factual basis supporting a guilty plea be established, or that the defendant admit factual guilt, so long as the plea is intelligently and voluntarily made. *Holtgreive,* 174 F. Supp. 2d at 583; *See also Coddington v. Langley,* 202 F. Supp. 2d 687, 702 (E.D. Mich. 2002)*; rev'd on other grds,* 77 Fed. Appx. 869 (6th Cir. 2003).

In any event, there was sufficient evidence presented at the degree hearing for the judge to conclude that the elements of first-degree felony murder had been made out. Under Michigan law, the elements of first-degree felony murder are:

> (1) the killing of a human being;
> (2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
> (3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.
> *Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003)(*citing* to *People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the

18

defendant is armed with a weapon described in the statute. *See Lovely v. Jackson,* 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004)(citing M.C.L.A. 750.529; *People v. Allen*, 201 Mich. App. 98, 100; 505 N.W. 2d 869 (1993))

The victim in this case was discovered after the shooting with duct tape around his arm and covering his bracelet and medallion. The victim had suffered injuries on both sides of his face. The victim's mother, as well as the police officer who investigated the crime scene, stated that the victim's wallet and his jewelry were missing after the shooting. There was also evidence presented that the victim was engaged in drug trafficking, which lead to the reasonable inference that he was a likely target of a robbery. The detective who investigated the case testified that petitioner admitted that he possessed a gun at the time that the victim was shot and that he and Ardell Robinson discussed robbing someone. This evidence was sufficient to support a finding that petitioner was guilty of first-degree felony murder. Petitioner is not entitled to habeas relief on his final claim.

### D. A certificate of appealability.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [2] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has

---

[2] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). When a federal district court rejects a habeas claim on the merits, the

substantial showing threshold is met if the petitioner demonstrates that reasonable

jurists would find the district court's assessment of the constitutional claim debatable or

wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this

standard by demonstrating that ... jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S.

322, 327 (2003). In applying this standard, a district court may not conduct a full merits

review, but must limit its examination to a threshold inquiry into the underlying merit of

the petitioner's claims. *Id.* at 336-37.

The Court concludes that jurists of reason could find its assessment of the

constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484-85. Any doubt

regarding whether to grant a COA from the denial of a petition for federal habeas relief

is resolved in favor of the habeas petitioner, and the severity of the penalty may be

considered in making that determination. *See Newton v. Dretke,* 371 F. 3d 250, 253

(5th Cir. 2004). Any doubts regarding the issuance of a COA in this case should be

resolved in petitioner's favor, in light of the non-parolable life sentence that he is

serving. More particularly, jurists of reason could find this Court's resolution of his Fifth

Amendment, ineffective assistance of counsel, and sufficiency of evidence claims to be

debatable. The Court thus issues petitioner a COA with respect to all of petitioner's

claims.

Petitioner is also granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous. A court may grant *in forma pauperis* status if the court finds that an appeal is being taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Watkins is not entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court issues petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.


S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: September 10, 2010


I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on September 10, 2010, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary